**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT A. PAPWORTH,**

|                              |                    |
|------------------------------|--------------------|
| **Plaintiff,**               | **5:06-CV-1237**   |
| **vs.**                      | **(NAM/DEP)**      |

**STEEL HECTOR & DAVIS,**

**Defendant.**
_____

| **APPEARANCES:**             | **OF COUNSEL:**         |
|------------------------------|-------------------------|
| Robert A. Papworth           |                         |
| _Plaintiff Pro Se_           |                         |
|                              |                         |
| Hancock & Estabrook          | Daniel B. Berman, Esq.  |
| 1500 Tower I                 |                         |
| P.O. Box 4976                |                         |
| Syracuse, New York 13221-4976|                         |
| _Attorney for Defendant_     |                         |

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

### INTRODUCTION

Defendant Steel Hector & Davis (SHD)[1] moves this Court for dismissal of the plaintiff's complaint in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the plaintiff's complaint on the grounds that the Court lacks subject matter jurisdiction.

_____

[1] Counsel for defendant asserts that he is the attorney for "Defendant Squire, Sanders & Dempsey, LLP (SSD), successor in interest to Steel Hector & Davis (SHD)." However, the caption has not been amended.

Defendant further moves pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted.[2]  Plaintiff has opposed defendant's motion.

## THE COMPLAINT

In support of the claims herein, plaintiff makes the following factual and legal averments: Plaintiff is a resident of Syracuse, New York.  Plaintiff alleges that the law firm of Steel Hector & Davis (SHD) practiced law in Syracuse and maintains an address in Miami, Florida.  This matter stems from a protracted family dispute regarding the estate of plaintiff's uncle, William S. Papworth.  William S. Papworth, died in Hampton Bay, New York in October of 1993.  Plaintiff and his family have been involved in extensive state and federal court litigation regarding various trusts and Mr. Papworth's assets. [3]

In the summer of 1991, William S. Papworth and his financial advisor/nephew, Philip Papworth, created amendments to three trusts entitled the Tampa Bay Trust, the Titusville Trust and the Merritt Island Trust.  Each trust was a revocable trust with William S. Papworth as the trustee.  The trusts were amended to name Philip Papworth as the successor trustee replacing Mr. Papworth's longtime lawyer, Sherwin Simmons, the previously named successor.   The amendments were made using William S. Papworth's computer, copies of which were left on the

---

[2]  Defendant's Notice of Motion requests "an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment dismissing plaintiff's complaint in its entirety".  However, the motion papers do not include a Statement of Material Facts and substantively, the defendant argues for dismissal, not summary judgment.  Therefore, the Court deems this motion to be a request for dismissal not summary judgment.

[3] The complaint is vague as to the venue of the prior lawsuits.  The only information contained in the complaint suggests that there was federal court litigation in 1998 in the United States District Court in Tampa.

hard drive.  Later that summer, hard copies of those documents were further revised by William and Philip thereby rendering the documents contained on the computer hard drive obsolete.

After the documents were revised, William S. Papworth "gifted" his computer to his nephew Richard Coursen and instructed Mr. Coursen to safeguard his records.  Mr. Coursen's sister, Susan Coursen Robichaud, gained access to the computer and  printed the trust documents from the hard drive without Mr. Coursen's knowledge.  Ms. Robichaud then conveyed these documents to her sister, Alexandra Coursen, who is also a lawyer.  The plaintiff first became aware of the computer "theft" in January of 1993.  (Compl. at ¶ 14).

William S. Papworth, with Alexandra Coursen's assistance, created a new trust entitled the Bamboo Bay Trust (BBT).  The new trust was created without the knowledge of William Papworth's financial advisor, Philip Papworth.  In December of 1992, copies of the BBT documents were sent from William Papworth's lawyer, Sherwin Simmons, Esq., to Ms. Coursen.  Ms. Coursen entered the documents into her computer and made modifications.  She deleted the names of William's sisters as the beneficiaries of the trust.  She also created a committee of three beneficiaries empowered to fire the personal representative appointed in William Papworth's will.  Ms. Coursen then accompanied William S. Papworth to the office of her attorney, David Holstein, where Mr. Papworth signed the BBT without counsel and allegedly without reading the document.  Plaintiff claims that the funding for this trust caused William S. Papworth's estate to become insolvent.

William Papworth died in October of 1993.  Philip Papworth was the personal representative named in William Papworth's will.  In November of 1993, he retained the Orlando law firm of Dean Mead to represent him and the estate.  Shortly thereafter, plaintiff and his sisters

commenced a "lawsuit against the estate."[4]   The lawsuit was filed to expose the alleged fraud by Ms. Coursen and others in manipulating the estate and assets of William Papworth.  Plaintiff's goal was to determine how the computer records were provided to Coursen and then, possibly, commence a lawsuit against the BBT in New York State Court.  Plaintiff and his family were represented by the Syracuse office of Bond, Schoeneck & King (BSK).  After the action was filed,  BSK withdrew from representing the plaintiff due to a conflict.  The plaintiff then retained a Sarasota law firm, Kirk-Pinkerton, and a "new complaint" was filed.[5]   During the course of this litigation, Ms. Coursen was represented by several different attorneys including Sherwin Simmons, Esq..  Mr. Simmons, who had previously represented William S. Papworth for twenty (20) years, began representing Ms. Coursen sometime in 1993.

The defendant law firm, SHD, first became involved in this dispute sometime in 1994 when Sherwin Simmons, became affiliated with SHD.[6]  During the course of SHD's representation of Ms. Coursen, Wilson Smith, Esq. was also involved in this matter.  In February 1995, depositions were conducted in the underlying lawsuit.  Upon being faced with a motion to dismiss, the plaintiff voluntarily discontinued the lawsuit.  After the action was discontinued, the

---

[4] The record does not contain the caption, index number, venue or date of filing for the lawsuit.

[5] The record does not contain the caption, index number, venue or date of filing for this lawsuit.

[6] The complaint does not state how Mr. Simmons was "affiliated" with SHD.  There is no information in the record to determine whether he was a member of this firm or otherwise associated.  According to the plaintiff's opposition papers, Mr. Simmons is no longer involved or affiliated with SHD.

defendant estate filed a "bad-faith lawsuit" against plaintiff personally and his family.[7]   All of the aforementioned litigation occurred before 1996.[8]   No further legal action has ensued with respect to this matter, by any individual or entity since 1996.  The plaintiff claims he has continued "his efforts to get the Coursens to come clean."  He has written various letters to the Coursen family and their attorneys and claims to have received correspondence in return.[9]

The plaintiff's complaint is 82 paragraphs in length.  However, only a portion of the complaint contains actual allegations against defendant SHD.  The vast majority of allegations are directed towards Alexandra Coursen, other family members and other law firms/entities.  The only allegations in the complaint asserted against SHD are as follows:

> . . . [m]aking false statements, lawyer/client conspiracy to defraud, bankrupt estate fraud, entrapment of personal representative for unlawful purpose (Hobbes Act), wanton infliction of intentional emotional distress, wanton collusion.  (Compl. at ¶ 70).

> Steel Hector & Davis threatened Philip Papworth, in a letter, with lawsuit [sic] against him personally if he attempted to negotiate with the IRS to have the insolvency for taxes paid . . . Entrapment using legal procedure for unlawful purpose (Hobbes Act), malpractice of law, conspiracy to defraud, deceptions of tribunals, collusive use of attorney/client privilege to defeat purpose of privilege, misprision of felony, wanton intentional infliction of emotional distress, malicious fraud, wanton collusion, obstruction of justice.  (Compl. at ¶ 72).

> Steel Hector & Davis practiced law in New York State . . [t]he client and witnesses comitted [sic] perjury by concealing Susan C. Robichaud's theft of William's records, and generally misrepresenting their actions . . . Failure to use crime/fraud exception to rectify client & witness perjury, collusion, use of attorney/client confidentiality for improper

---

[7] The record does not contain the caption, index number, venue or date of filing for this lawsuit.

[8] The record does not contain any information regarding the present status of any legal proceedings.

[9] The record does not contain copies of any correspondence between any of the parties or other individuals/entities.

purpose, perjury, suborning witnesses, unlicensed practice of law, obstruction of justice. (Compl. at ¶ 74)

Steel Hector & Davis filed a vexacious [sic], bad-faith lawsuit against the members of my family demanding tax apportionment payments from my family . . . SHD presented false and fraudulent accounting to the Sarasota Probate Court. . . [f]iling false claims and statements, concealment of material witnesses, coercion with legal procedure for fraudulent purposes, vexacious [sic] bad-faith law suit, wanton collusion, wanton intentional infliction of emotional distress, malicious fraud.  (Compl. at ¶ 75).

SHD secured a restraining order from the U.S. District Court in 1996 to stop collection of estate tax from the BBT, thereby defrauding the State of Florida $5,000,000.  (Compl. at ¶ 76).

To evade ordinary probity, SHD obtained a mediator named Grimsley.  Then, Wilson Smith, Esq. began to "mediate" over the underlying civil lawsuit issues, informally attempting to rectify the consequences of SHD's fraud, collusion with its client, and its' client's fraud, which had deprived my family of its preferred legal counsel, and then fraudulently disrupted our lawsuit.  (Compl. at ¶ 77).

. . . [c]ollusion of SHD & Coursen, misprision of felony, making false statements, deception of tribunal, failure to implement crime/fraud exception to attorney/client privilege, violation of Florida Statute of evidence, violation of N.Y.S. Statute of Evidence, N.Y.S. Judiciary Law sec. 487.  (Complaint. at ¶ 78).

In February, 1999 Wilson Smith of SHD was informed by Richard Coursen, Jr. that the computer records (trust amendments) had been stolen from the computer system and from him, that he had been deceived by Alexandra Coursen, SHD's client, that those records had been given to Alexandra Coursen and were the key element in commencing her fraud. Smith failed to implement crime/fraud exception to rectify his client's defrauding of my family.  (Compl. at ¶ 79).

On November 9, 2000 I wrote to Wilson Smith, requesting that he stop his client's fraud. He wrote a letter, on November 16, 2000 to my lawyer, Norman Vaughan-Birch, Esq. lying outright to keep Coursen's fraud concealed.  (Compl. at ¶ 80).

SHD committed wanton, mercenary, intentionally emotionally distressing, outrageous misconduct and continuous collusion with its client, Coursen to defraud my family, starting with solicitation of Coursen in the cemetery in Syracuse in 1993, throughout its lie in its letter of November 9, 2000.  (Compl. at ¶ 81).

From January 1, 1993 through October 9, 2006 I have expended more than $1,000,000 of personal time and expense to defend myself and my family.  (Compl. at ¶ 82).

The plaintiff alleges fraud as against the defendant with an accrual date of November 16,

Plaintiff alleges that the "collusion" of defendant SHD and its client, Alexandra Coursen, tolls the

applicable statute of limitations.  The plaintiff seeks damages in the amount of "$8,000,000 plus

9% [interest] per year from February 1993 to the date of judgment plus legal fees, damages and

emotional distress of $1,000,000 plus damages for time and effort of $1,000,000 and punitive

damages."

**DISCUSSION**

**SUBJECT MATTER JURISDICTION**

In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]"

*Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Scheuer*

*v. Rhodes*, 416 U.S. 232, 236 (1974)), though "argumentative inferences favorable to the party

asserting jurisdiction should not be drawn." *Id*. (citing *Norton v. Larney*, 266 U.S. 511, 515

(1925)).  A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

may include evidence outside the pleadings, e.g., affidavit(s) or otherwise competent evidence.

*See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  As the party "seeking to

invoke the subject matter jurisdiction of the district court", plaintiff bears the burden of

demonstrating that there is subject matter jurisdiction in this case.  *Scelsa v. City Univ. of New*

*York*, 76 F.3d 37, 40 (2d Cir. 1996).

Title 28 U.S.C. § 1332 confers district courts subject matter jurisdiction over actions

between "citizens of different States".  28 U.S.C. § 1332(a)(1).  "[W]hether federal diversity

jurisdiction exists is determined by examining the citizenship of the parties at the time the action

is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (citing 13B C. Wright, A.

7

Miller & E. Cooper, Federal Practice and Procedure § 3608, at 448-49 (2d ed. 1984)); 15 J.

Moore, Moore's Federal Practice § 102.32, at 102-61-62 (3d ed. 1998); *Grupo Dataflux v. Atlas*

*Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

It is well established that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. §

1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is

complete."  *Herrick Co., Inc. v. SCS Commc'n Inc.*, 251 F.3d 315, 323 (2d Cir.  2001) (citing

*Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998)). The nature of

that burden, however, depends on the "procedural path the district court chooses to follow" in

deciding the jurisdictional question, a matter which is left to the court's discretion. *Cutco Indus. v.*

*Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *see also Raphael v. 18 Restaurant, Inc.*, 954 F.Supp.

549, 552 (E.D.N.Y. 1996) (indicating hearings normally required to determine subject matter

jurisdiction when "court does not have sufficient information before it to determine the principal

place of business of each defendant . . . ."); *see also Dillard v. Runyon*, 928 F.Supp. 1316,

1321-22 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997); *Ferrara Bakery & Café, Inc. v.*

*Colavita Pasta & Olive Oil Corp.*, 1999 WL 135234 at *3 (S.D.N.Y. 1999) ("[A] court may

properly look beyond the jurisdictional allegations of the complaint and view whatever evidence

has been submitted on the issue to determine whether subject matter [jurisdiction] exists.").

Where parties raise factual challenges by way of Rule 12(b)(1), "the court may conduct

whatever further proceedings are appropriate to determine whether it has jurisdiction". *Guadagno*

*v. Wallack Ader Levithan Assoc.*, 932 F.Supp. 94, 95 (S.D.N.Y. 1996).  If the court chooses to

hold an evidentiary hearing, a preponderance of the evidence rule applies.  However, if the issue

is decided on the basis of written submissions and pleadings, a *prima facie* showing of personal

jurisdiction is all that is required, with the submissions and pleadings being considered in the light

most favorable to the party asserting the jurisdictional claim.  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

   For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled.  *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  A limited partnership has the citizenship of each of its partners.  *Strother v. Harte*, 171 F.Supp.2d 203, 205 (S.D.N.Y. 2001) (complaint did not indicate where partners or members "reside", consequently, complete diversity had not been properly alleged); *see also Herrick Co. v. SCS Commc'n, Inc*., 251 F.3d 315, 322 (2d Cir. 2001); *Jawbone, LLC v. Donohue*, 2002 WL 1424587, at *2 (S.D.N.Y. 2002) (jurisdictional allegations flawed as plaintiff did not identify the members of the defendant entities or state where those members are domiciled).

   In the instant action, plaintiff has the burden of establishing that complete diversity existed at the time the complaint was filed.  Although his pleadings contain defective jurisdictional allegations, the Court gives generous consideration to his claim because he is a *pro se* litigant.  *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (advising court "to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training").  The complaint lists only the principal place of business of SHD as Miami, ignoring the firmly established legal principle that SHD is deemed to have the citizenship of each of its partners.  *Meadowcroft Assoc., Inc. v. Polk & Wardwell*, 2001 WL 1112693. at *1 (S.D.N.Y. 2001).

   Nevertheless, the proof submitted by defendant in furtherance of demonstrating lack of complete diversity is inadequate.  The only evidence submitted in support of the motion to dismiss for lack of subject matter jurisdiction is the Declaration of Alvin B. Davis, Esq..  Mr. Davis is the managing partner of SSD's Miami office.  Mr. Davis avers that SSD merged with

SHD on September 6, 2005, prior to the filing of this action.  Mr. Davis further states that SSD currently maintains an office on Park Avenue in New York City with six (6) partners who are citizens of the State of New York.  However, Mr. Davis does not claim that he himself is a citizen of the State of New York nor does he provide the names or addresses of these alleged New York partners.  Defendant has also failed to provide affidavits or declarations from any of these partners which establish that they are residents of the State of New York.

Moreover, defendant has not provided any written documents establishing that SSD is the successor in interest to SHD.  *Multistack LLC v. Arctichill, Inc.*, 2006 WL 510506, at *1 (S.D.N.Y. 2006).  Indeed, defendant has not sought to amend the caption to name SSD as the alleged "proper defendant."  In analyzing jurisdiction with respect to successor-in-interest cases, there is a distinction between a merger and an acquisition of assets.  *See Schenin v. Micro Copper Corp.*, 272 F.Supp. 523,526 (S.D.N.Y. 1967).  Mr. Davis' declaration does not contain any exhibits or materials relating to the alleged merger or acquisition.  *Cal Distrib., Inc. v. Cadbury Scweppes Am. Beverages, Inc.,* 2007 WL 54534, at *5 (S.D.N.Y.  20007).  The defendant has not provided sufficient evidence to establish that diversity did not exist at the time the action was commenced.  Therefore, the Court cannot make a determination that it lacks subject matter jurisdiction.  Accordingly, defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be denied.

## FAILURE TO STATE A CLAIM

Defendant further moves for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In addressing defendant's motion to dismiss, the Court accepts as true all of the factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994);

*McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

It is well settled that the Court may not look to evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."). A court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference". *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

In the complaint, plaintiff refers to his website "floridalegalethicscomplaint.com" and attempts to incorporate the content and/or substance of this website by reference as part of his legal claims. This proffered "evidence" cannot be considered by this Court in connection with a motion to dismiss under Rule 12(b)(6) since the contents of the website are purely extrinsic and are not attached as exhibits to or properly considered as part of plaintiff's complaint. *See Gragg v. Int'l Mgmt. Group*, 2007 WL 1074894, at *4 (N.D.N.Y. 2007). Further, in the complaint, the plaintiff refers to written correspondence between the parties including two (2) letters allegedly dated November 9, 2000 and November 16, 2000. The plaintiff did not annex these letters as exhibits to the complaint, nor were they attached to defendant's moving papers or plaintiff's

11

opposition to the motion.  The alleged content of these letters and any other extraneous

documents will not be considered by the Court for the purposes of this motion.

### FRAUD

Defendant moves to dismiss the plaintiff's cause of action for fraud arguing that any fraud

claim based upon events occurring prior to October 11, 2000 is barred by the applicable statute of

limitations.  Further, defendant argues that claims of fraud having allegedly occurred after that

date are also subject to dismissal as the plaintiff has failed to plead fraud with particularity as

required by Rule 9(b) of the Federal Rules of Civil Procedure.

### Statute of Limitations

"The statute of limitations for a cause of action sounding in fraud is six years from the

date of the wrong, or two years from the date the fraud could reasonably have been discovered,

whichever is later."  *See* N.Y. C.P.L.R. § 213(8); *Siler v. Lutheran Social Serv. of Metro. N.Y.*, 10

A.D.3d 646, 648 (2d Dep't 2004).  "[A] cause of action for fraud does not accrue when the

fraudulent act is committed, but rather when the plaintiff suffers a loss, i.e., 'when a plaintiff with

assumed knowledge of the fraudulent wrong may assert a claim for relief.' "*Asbeka Indus. v.

Travelers Indemnity Co.*, 831 F.Supp. 74, 81 (E.D.N.Y. 1993) (quoting *Cruden v. Bank of New

York*, 957 F.2d 961, 974 (2d Cir. 1992)).

If a plaintiff fails to meet the relevant statute of limitations requirement, a court may

consider whether there is a basis to toll the limitations period. *Fitzgerald v. Citigroup, Inc*., 2007

WL 582965, at *8 (S.D.N.Y. 2007).  Equitable tolling will stay the running of the statute of

limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to

learn the facts which would disclose fraud.  *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d

Cir. 1993).  Equitable tolling applies where a plaintiff was blamelessly ignorant of his claim or

there was culpable action by the defendant which concealed plaintiff's claim.  *See Johnson v. Nyack Hosp.*, 891 F.Supp. 155, 165 (S.D.N.Y. 1995)); *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978) (equitable tolling is available only where a defendant's fraudulent or deceptive actions prevented plaintiff from discovering the fraudulent scheme and/or filing a claim within the statutory period).  Any delay resulting from the plaintiff's ignorance of facts that would give rise to an action must be consistent with the requisite diligence.  *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1443 (S.D.N.Y. 1986).  Facts that should arouse suspicion, for example, are equated with actual knowledge of the claim.  *See id.*

Plaintiff states that the "date of fraud" was November 16, 2000.  However, a complete review of the complaint reveals that the alleged "fraud" first occurred in 1991 and was discovered by the plaintiff as early as 1993.   In fact, the plaintiff commenced legal action against the estate in 1993 "to uncover the fraud."  Plaintiff argues that the statute of limitations is tolled due to the defendant's collusion.  However, plaintiff fails to cite any action on the part of the defendant that induced him to refrain from bringing this fraud claim until October, 2006.  *Scherer v. Gaildon Med. Sys., Inc.*, 2004 WL 2884312, at *4 (S.D.N.Y. 2004).  Plaintiff has not set forth any evidence to establish that any action on the part of the defendant prevented him from filing the within lawsuit in a timely manner.   Plaintiff concedes that though he had knowledge of the facts giving rise to his fraud claims as early as 1993, he has "been extremely and relentlessly diligent in searching for the mechanism of Coursen's fraud throughout this long period of time."  However, there is no compelling reason for this Court to toll the statute of limitations in favor of a plaintiff who knew that he was being defrauded.  *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).  Therefore, all claims for fraud arising before October 11, 2000, must be dismissed.

**Compliance with Rule 9(b) of the Fed. R. Civ. P.**

13

Defendant argues that all claims for fraud that allegedly occurred after October 2000 should also be dismissed based upon plaintiff's failure to comply with Fed. R. Civ. P. 9(b) which sets forth a heightened pleading standard for fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Pursuant to Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Under New York law, for a plaintiff to prevail on a claim of fraud, he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) reasonable reliance on the part of the plaintiff, and (5) that causes damage to the plaintiff.  *Lerner*, 459 F.3d at 291 (quoting  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).

Defendant contends that plaintiff has not plead fraud with the required particularity as he has failed "set forth the [alleged fraudulent] statement in the November 16, 2000 letter or how it was false" and has failed to specify the facts of his alleged "reasonable reliance."  The Court notes that dismissal of a complaint is not appropriate based upon an alleged lack of "reasonable reliance."  Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss.  *See Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (2d Dep't 1992) ("In a fraud action, whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question.") (citations omitted);

14

*MTV Networks, a Division of Viacom Int'l, Inc. v. Curry*, 867 F.Supp. 202, 207 (S.D.N.Y. 1996) ("Questions of the reasonableness of reliance raise issues of fact that must be resolved at trial."); *City of Amsterdam v. Goldreyer*, Ltd., 882 F.Supp. 1273, 1281-82 (S.D.N.Y.1995) (court refused to dismiss fraud case on 12(b)(6) motion, holding that "[d]efendants' argument that the City's reliance was not justified is an issue of fact that must be litigated at trial")).

However, a complaint is susceptible to dismissal for failure to adequately plead fraud in accordance with Fed. R. Civ. P. Rule 9(b).  The rule requires that the pleadings set forth the alleged fraud with particularity, including "the who, what, when, where, and how [of the fraud] . . . ." *Kalin v. Xanboo, Inc.*, 2007 WL 273546, at *6 (S.D.N.Y. 2007) (quoting *In re Initial Pub. Offering Secs. Litig.*, 241 F.Supp.2d 281, 327 (S.D.N.Y. 2003)) (citation omitted).

Plaintiff's complaint fails to satisfy the first prong of Rule 9(b).  Specifically, plaintiff has failed to identify any statement made by the defendant that was fraudulent.  Plaintiff argues that Wilson Smith's letter contains the detailed information necessary to comply with Rule 9(b). However, plaintiff's complaint merely mentions this letter and other correspondence allegedly sent and received.  The letter is not part of the record and the complaint fails to specify what statements were made in the letters, the manner in which the statements in the letters were false or misleading, their connection or relation to the particular defendant, or the purpose of the letters in defendants fraudulent scheme.  *Discon Inc. V. NYNEX Corp.*, 1992 WL 193683, at *9 (W.D.N.Y. 1992).  Although plaintiff argues that SHD was part of a conspiracy to defraud plaintiff and his family, "[t]he word 'conspiracy' does not alone satisfy the specificity requirement of Rule 9(b)." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972).  There must be specific identification of the alleged inaccurate statements.  *See Todd v. Oppenheimer and Co.*, 78 F.R.D. 415, 420 (S.D.N.Y.1978).

15

Insofar as identifying the alleged fraud, the complaint herein contains precisely the type of conclusory allegations which Rule 9(b) prohibts. *Gilfus v. Vardason*, 2007 WL 2827658, at *8 (N.D.N.Y. 2006). Even assuming *arguendo,* however, that a fraudulent statement was made, plaintiff has not alleged facts which establish the required inference of defendant's fraudulent intent. *D'Orange v. Feely*, 877 F.Supp 152, 159 (S.D.N.Y. 1995); *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994)); *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). A plaintiff can establish an inference of fraudulent intent in two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co*., 101 F.3d 263, 267 (2d Cir. 1996) (citing *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir.1994)). Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. *Shields*, 25 F.3d at 1130. General allegations that the defendants acted in their economic self-interest are not enough. *Ganino v. Citizens Utilities, Co*., 228 F.3d 154, 170 (2d Cir. 2000) (citing *Shields*, 24 F.3d at 1130) (motive allegation that the defendants concealed and misrepresented the corporations' financial condition were common to all corporate executives too generalized to demonstrate scienter); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). On the other hand, "[r]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Chill*, 101 F.3d at 269) (quoting *Roth v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978)) (alteration in original and quotation omitted), op. am., Nos. 77-7104, 77-7124, 1978 WL 4098 (2d Cir. May 22, 1978), cert. denied, 439 U.S. 1039 (1978).

The complaint herein contains no allegations concerning defendant SHD's fraudulent intent.  While the complaint alleges that SHD assisted Alexandra Coursen in "commencing her fraud," nowhere does plaintiff state what motivated SHD to "defraud the plaintiff's family."  The complaint fails to allege adequately concrete benefits inuring to defendant because of the fraud.  Even if the Court infers from a liberal reading of the complaint that SHD was motivated by financial gain for its client, those allegations are insufficient.  Because plaintiff has failed to allege significant facts from which the Court can infer scienter, he has not met his burden under Rule 9(b). *Sloane Overseas Fund, Ltd. v. Sapiens Int'l. Corp., N.V.*, 941 F.Supp. 1369, 1382 (S.D.N.Y. 1996) (citing *In re Integrated Resources Real Estate Ltd. Partnerships Securities, Litigation*, 815 F.Supp. 620, 670 (S.D.N.Y.1993)).   Based thereupon, defendant's motion to dismiss all fraud claims, with the exception of the claim made in connection with the November 16, 2000, letter from Wilson Smith, must be granted.

Pleadings submitted by *pro se* litigants "should be 'construed liberally,' " and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.' " *Jennis v. Rood*, 488 F.Supp.2d 172 (N.D.N.Y. 2007).   A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Id.* (citing *Toney v. Goord*, 2006 WL 2496859, at *5 (N.D.N.Y. 2006).  Because the *pro se* plaintiff herein has alleged that defendant made specific fraudulent statements by way of Wilson Smith's November 16, 2000, letter, but has failed to produce the letter in support of his claims herein, the Court will afford him the opportunity to do so by way of repleading.  Thus, plaintiff's fraud claim(s) against defendant which arose from the November 16, 2000, letter from Wilson Smith to plaintiff will be dismissed without prejudice to repleading provided that the elements of the claim and a sufficient

17

factual basis thereof, can be stated. *Lutin v. New Jersey Steel Corp*., 1996 WL 636037, at *7 (S.D.N.Y. 1996).

## CONSPIRACY

New York does not recognize an independent tort to recover for civil conspiracy. *Kwan v. Schlein*, 441 F.Supp.2d 491, 505 (S.D.N.Y. 2006) (citing *New Dimensions Spa, Inc. v. Fitness Place Rockville Centre, Inc*., 187 A.D.2d 493, 494 (2d Dept.1992)). Therefore, defendant's motion to dismiss plaintiff's cause of action for "conspiracy" must be granted.

## PLAINTIFF'S REMAINING CAUSES OF ACTION

Liberally construing the complaint, the Court recognizes plaintiff's attempt to assert five (5) additional causes of action against defendant: legal malpractice, obstruction of justice, violation of N.Y.S. Judiciary Law 487 (collusion), filing of false claims, and intentional/wanton infliction of emotional distress. The Court is compelled, *sua sponte,* to examine these causes of action for legal sufficiency. *See Nunez v. Goord*, 172 F.Supp.2d 417, 433 (S.D.N.Y. 2001) ("the Court has the power to dismiss a complaint sua sponte for failure to state claim") (citing *Leonhard v. United States*, 633 F.2d 599, 609 (2d Cir. 1980)); *see also Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) ("[d]istrict courts are especially likely to be exposed to frivolous actions and, thus, have a great[ ] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources.").

### Legal Malpractice

"Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client." *Viscardi v. Lerner*, 125 A.D.2d 662, 664 (2d Dep't 1986). The plaintiff does not claim that he had a contractual relationship with defendant. Moreover, even if

18

he did claim such a relationship, the statute of limitations in which to bring legal malpractice claims in this context is three years. *Gutman v. Equidyne Extractive Ind. 1980 Petro/Coal Program I,*, 1990 WL 113193, at *6 (S.D.N.Y. 1990). The letter which is the basis of the plaintiff's claim of fraud is allegedly dated November of 2000. The plaintiff did not file the within action until October of 2006. Therefore, plaintiff's claims for professional malpractice against SHD are barred by the applicable statute of limitations.

Finally, within the context of the malpractice claim, the plaintiff has also alleged a cause of action for the "unlicensed practice of law". This is not a viable cause of action for the plaintiff and therefore, this allegation is dismissed with prejudice. *Herbst v. Viglianco*, 1999 WL 362960, at *4 (S.D.N.Y. 1999).

**Obstruction of Justice**

The plaintiff claims that the defendant obstructed justice "by failing to implement crime/fraud exception to rectify his client's defrauding my family." However, there is no private right of action under state or federal law for obstruction of justice. *See Garay v. U.S. Bancorp*, 303 F.Supp.2d 299, 302 (E.D.N.Y. 2004); *see also Langella v. United States*, 2002 WL 1218524, at *4 (S.D.N.Y. 2002) (stating that obstruction of justice may be enforced only by the Department of Justice). Accordingly, this claim lacks merit.

**N.Y.S. Judiciary Law § 487 and Collusion**

New York State Judiciary Law § 487 provides for a cause of action against an attorney who has engaged in "deceit or collusion…with the intent to deceive the court or any party." N.Y. Jud. L. § 487(1); *Daniels v. Alvarado*, 2004 WL 502561, at *9 (E.D.N.Y. 2004); *see also Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978). In establishing the requisite intent to deceive, courts often look for "chronic" or "extreme" legal delinquency. *O'Connel v. Kerson*, 736

19

N.Y.S.2d 895, 896 (N.Y.App.Div. 2002).  In order to state a claim for a violation of Section 487, plaintiff must show that he suffered damages caused by defendant's alleged deception.  *Lazer Elec. Corp. v. Cecchi*, 1997 WL 311925, at *5 (S.D.N.Y. 1997) (citing *Cresswell v. Sullivan & Cromwell*, 771 F.Supp. 580, 587 (S.D.N.Y. 1991)) ("an element of a claim under § 487 is that the attorney's deceit must have caused the plaintiff's damages"), *aff'd*, 962 F.2d 2 (2d Cir.), *cert. denied*, 505 U.S. 1222 (1992);  *DiPrima v. DiPrima*, 111 A.D.2d 901, 902 (N.Y.App.Div.1985) (where attorney was "undeniably engaged in activity with intent to deceive the court," § 487 claim nonetheless dismissed because "plaintiff failed to prove she was injured as a result of the deceit or collusion").

Plaintiff claims that the submissions by the defendant to the U.S. District Court on behalf of its client constitutes attorney misconduct.  However, plaintiff has failed to demonstrate a factual nexus between the alleged misconduct and actual damages.  *Werner v. Katal Country Club*, 234 A.D.2d 659, 663 (3ʳᵈ Dep't 1996).  Additionally, the plaintiff's collusion claim rests with the argument that the defendant "secured a restraining order from the U.S. District Court, Tampa . . . defrauding the State of Florida of $5,000,000."  However, Section 487 only applies to conduct within the borders of New York State.  *See Nardella v. Braff*, 621 F.Supp 1170, 1172 ( S.D.N.Y. 1985) (citing *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978)).  Based thereupon, the claim for attorney misconduct must be dismissed.

### Filing of false claims and statements

Plaintiff contends that the defendant filed a "vexacious, [sic] bad-faith lawsuit against members of [his] family demanding tax apportionment payments from [his] family."  To the extent that plaintiff is attempting to base his fraud claim against defendant on the filing of a lawsuit in bad faith, with knowledge that complaint contained false statements, the claim lacks

merit.  *Brownstone Inv. Group, LLC. v. Levey*, 468 F.Supp.2d 654, 658 (S.D.N.Y. 2007).  The

appropriate remedy for such a violation, if sufficient evidence were found to support it, would be

a motion for sanctions in the state court where the action is venued.

### Wanton/Intentional Infliction of Emotional Distress

In New York, to survive a motion to dismiss, allegations of intentional infliction of

emotional distress must satisfy the rule set out in Restatement of Torts, Second.  That section

provides in pertinent part that "[o]ne who by extreme and outrageous conduct intentionally or

recklessly causes severe emotional distress to another is subject to liability for such emotional

distress."  *See Fischer v. Maloney*, 43 N.Y.2d 553, 557 (1978).  Liability for intentional infliction

of emotional distress is established only where the alleged conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.  *Murphy v. Am. Home

Prod. Corp.*, 58 N.Y.2d 293, 303 (1983).  Applying this rigorous standard, the Court finds that

plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.  There are

no allegations contained in the complaint which, if true, would constitute conduct so outrageous

to give rise to a claim for intentional infliction of emotional distress. *MaGee v. Paul Revere Life

Ins. Co.*, 954 F.Supp 582, 587 (E.D.N.Y. 1997); *see also .Morales v. United States*, 961 F.Supp.

633, 638 (S.D.N.Y. 1997).

Moreover, even assuming that plaintiff had pleaded a legally viable claim for intentional

infliction of emotional distress, the cause of action would be time-barred.  To wit, Section 215 of

the New York Civil Practice Rules imposes a one year statute of limitations for intentional

infliction of emotional distress.  *Tekula v. Bayport-Blue Point School Dist.*, 295 F.Supp.2d 224,

234 (E.D.N.Y. 2003).  Plaintiff admits that the last correspondence or communication from

defendant was the November 16, 2000, letter from Wilson Smith.  The complaint herein was not filed until October 11, 2006.  Thus plaintiff's claim for intentional infliction of emotional distress must be dismissed.

**Remaining Allegations**

To the extent that plaintiff's remaining allegations may be construed as additional causes of action, plaintiff does not have a legal right to sue for defendant's alleged "misprision of felony" (18 U.S.C. § 4), suborning witnesses, violation of the Hobbes Act and concealment of material witnesses.  *Greenspan v. Work*, 1991 WL 255373, at *6 (N.D.N.Y. 1991); *Del Re v. Del Re*, 2005 WL 1962341, at *1 (E.D.N.Y. 2005).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss for lack of subject matter jurisdiction is denied; and it is further

**ORDERED** that defendant's motion to dismiss the complaint with respect to the cause of action for fraud occurring prior to October 11, 2000, is granted with prejudice; and it is further

**ORDERED** that defendant's motion to dismiss the complaint with respect to the cause of action for fraud arising from an alleged letter from Wilson Smith to plaintiff on November 16, 2000, is granted without prejudice; and it is further

**ORDERED** that the defendant's motion to dismiss the plaintiff's cause of action for conspiracy is hereby granted with prejudice; and it is further

**ORDERED** that the defendant's motion to dismiss the plaintiff's complaint as to all other causes of action pursuant to Rule 12(b)(6) is otherwise granted with prejudice.

**IT IS SO ORDERED.**

Dated:  September 30, 2007

Norman A. Mordue
Chief United States District Court Judge

23